**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

**CARMEN CROWE,**

      **Plaintiff,**

**v.**                                            **CASE NO.: 3:06cv407/MCR/MD**

**PARAGON RELOCATION**
**RESOURCES, INC.,**

      **Defendant.**

_____/

**O R D E R**

This is an employment discrimination case which arose as a result of Defendant, Paragon Relocation Resources, Inc.'s ("Paragon") decision not to hire the Plaintiff, Carmen Crowe for a sales position with the company.  Plaintiff alleges that Paragon's decision was motivated by his age and thus in violation of both the Age Discrimination in Employment Act, 26 U.S.C. § 621, et seq., and the Florida Civil Rights Act of 1992.  Defendant has filed a motion to dismiss plaintiff's complaint on the basis of lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2).  The court held an evidentiary hearing on May 11, 2007, to resolve issues of disputed fact raised by the parties' affidavits.  After considering the arguments of counsel, the evidence presented at hearing, and the relevant case law, the court concludes it does not have personal jurisdiction over the defendant and the case should be transferred to the United States District Court for the Central District of California.

**Background**

Paragon is a Delaware corporation with its primary place of business in California.[1] Paragon is a full service relocation management company providing relocation services in

---

[1] Paragon also has offices in Connecticut, Illinois, Texas, Missouri, Hong Kong, London, and Ireland.

more than 140 countries and all fifty states, including Florida.[2]  Paragon, however, is not registered or licensed to do business in Florida; does not maintain an office in Florida; and has no property, telephone numbers, or bank accounts in Florida.  It also does not have any subsidiaries, agents, or employees in the state.

At the time of the events in this case, the president and CEO of Paragon was Joe Morabito.  Craig Selders served as Paragon's International Vice President.  The remainder of Paragon's employees in the United States worked in either sales or operations.  Sales employees marketed the company's services, while operations employees managed relocations for specific clients.  Three regional vice presidents managed Paragon's sales force, including Chris Furlotte, regional vice president for the West Coast and Gulf Coast states, and Brian Schaffer, regional vice president for the Eastern seaboard and several inland states.[3]  Chris Furlotte's sales force included Jay Acker, who operated from Paragon's Texas office and was responsible for marketing in seven states around the Gulf Coast, including Florida.[4]

Prior to 2004, Paragon's marketing efforts were directed at companies seeking to relocate their employees.[5]  In 2004, however, Paragon took steps to expand its business into affinity services, under which Paragon would contract with a membership or non-profit

---

[2]  Through its relocation services, Paragon provides clients with referral services for all aspects of a relocation, including "home marketing assistance, home-sale services, property management services, home-finding assistance, mortgage services, rental assistance, temporary accommodation services, transportation of household goods management, [and] travel management. . . ." Morabito Aff. ¶ 2.  Paragon, however, does not provide any of these services directly, but instead refers clients to service providers in these areas and then coordinates the management and progress of the relocation.

[3]  The evidence does not reflect the name of the third regional vice president.  Morabito, Selders, and Furlotte remain employed by the company in the same positions they held at the time of the events in this case.  Schaffer, however, is no longer with the company.  He was employed by Paragon for less than a year, beginning in early 2004 and ending in December of that year, when he was terminated for cause.

[4]  While plaintiff argues that the company's solicitations in Florida were directed by Schaffer, the evidence is to the contrary.  Joe Morabito testified that sales in Florida were conducted by Jay Acker from the Texas office under the supervision of Chris Furlotte in the California office.  To the extent Brian Schaffer's testimony differed, the court credits Morabito's testimony given his position in the company and knowledge of sales operations.

[5]  These clients are hereinafter referred to as Paragon's "relocation clients."

organization to allow Paragon to market its relocation services to the organization's members.[6]  As part of its planned expansion into the affinity area, Paragon sought to hire an Affinity Manager of Business Development.  This employee would have been located in the Washington, D.C., area[7] and would have solicited organizations there, in New York City, and throughout the northeast.[8]

In October 2004, as part of several emails between Schaffer, Acker, Furlotte, Selders, and Morabito discussing the open position, Schaffer indicated that there was currently an applicant in the "interview funnel."[9]  Def.'s Ex. 1 at 3.  Morabito instructed Schaffer to "pass [the applicant] around for second interviews."  Id.  Schaffer responded by sending Morabito and Selders Crowe's resume, which identified Florida as Crowe's home.  Morabito responded by advising Schaffer that "Florida does not do us much good."  Id.  Schaffer replied indicating that Crowe was willing to relocate and asked if Paragon wanted Crowe to relocate to Washington, D.C.[10]  Morabito responded that "[Crowe] looks to be 50 years old and he appears to be going backwards in his career.  That is not a good

---

[6]  These organizations are hereinafter referred to as "affinity clients."

[7]  Joe Morabito testified that the position would most likely have been located in Washington, D.C., but may have been located in Paragon's office in Connecticut.

[8]  Crowe argues that the Affinity Manager of Business Development also would have solicited affinity clients in Florida.  The evidence is to the contrary.  Joe Morabito testified that it made little economic sense for Paragon to locate the new position in Florida when the affinity market was largely concentrated in the Northeast, predominantly in Washington, D.C., and New York City.  Additionally, the evidence showed that Jay Acker was already handling the company's affinity solicitations in Florida.

[9]  Schaffer testified that he believed he had the responsibility to hire, recruit, and train sales directors, sales managers, and business development managers for the company's eastern region.

[10]  Schaffer admitted at the evidentiary hearing that after receiving this email from Morabito he felt the affinity marketing position was being directed into the Washington, D.C., area and thus Crowe would have to relocate in order to be considered for the position.  He testified, however, that he believed Crowe could still be considered for a position with Paragon as a Director of Sales for the Eastern Region, which would include soliciting relocation clients in Florida.  This testimony, however, is not supported by the record.  Jay Acker was responsible for soliciting both relocation and affinity clients in Florida.  Further, Schaffer's region did not include Florida and he did not have the authority to hire employees who would solicit potential clients in Florida.  Finally, even if Schaffer himself considered Crowe suitable for this other position, there is no evidence that Schaffer communicated this idea to anyone else in the company.  Crowe's cause of action, therefore, cannot be based on this other "potential" position as Paragon could not have unlawfully failed to hire Crowe for a position for which he was never considered.

sign." Id. at 2.  Schaffer understood this comment to mean that Morabito thought Crowe was too old for the position.  Soon thereafter, Schaffer repeated Morabito's comment in an email to Selders and further stated "so I read that in Joe's corporate speak as too old and a 'No.' Your take?" Id. at 1.  Selders responded "I think you've read it right and time to move on." Id.  Schaffer felt this email confirmed his suspicion that Crowe was not hired because of his age.

Paragon took no further action to consider Crowe for the position.  Paragon eventually offered the position to an individual who resided in the Washington, D.C., area., who declined the offer.  Paragon later determined it did not require an Affinity Manager of Business Development and thus delegated the duties of the position to one of Paragon's existing sales managers.  Paragon discontinued its affinity services in 2006.

**Legal Standards**

Courts in the Eleventh Circuit follow a two-step analysis when deciding whether personal jurisdiction exists over a nonresident defendant.  Sculptchair, Inc. v. Century Arts, Ltd., 94 F.3d 623, 626 (11th Cir. 1996).  First, the court must determine whether the state's long-arm statute (in this case Florida) provides a basis for personal jurisdiction over the defendant.  Id.  Second, if the state's long-arm statute provides a basis for personal jurisdiction, the court must then determine whether "minimum contacts" exist to satisfy the Due Process Clause of the Fourteenth Amendment such that "maintenance of the suit does not offend traditional notions of fair play and substantial justice" as set forth in International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). Id. (citations omitted). The minimum contacts requirement is satisfied if the defendant "purposefully directs activities at Florida and litigation arises out of those activities, or the defendant purposefully avails himself of the privilege of conducting activities within the forum state." Achievers Unlimited, Inc. v. Nutri Herb, Inc., 710 So. 2d 716, 719 (Fla. 4th DCA 1998); see also Burger King v. Rudzewicz, 471 U.S. 462 (1985); Hanson v. Denckla, 357 U.S. 235 (1958). Only if the court determines there is a basis for personal jurisdiction under the state long-arm statute does it conduct the due process analysis.  Nida Corp. v. Nida, 118 F.Supp.2d 1223, 1228 (M.D.Fla. 2000).

A plaintiff seeking to have the court exercise personal jurisdiction over a non-resident in Florida bears the burden of pleading facts sufficient to satisfy Florida's long-arm statute. Instrumentacion, Ltda. v. Philips Electronics North America Corp., 951 So.2d 1001, 1002 (Fla. 3d DCA 2007) (citing Venetian Salami Co. v. Parthenais, 554 So.2d 499, 502 (Fla. 1989)). These allegations must be sufficient to defeat a motion for a directed verdict. Lauzon v. Joseph Ribkoff, Inc., 77 F.Supp.2d 1250, 1252 (S.D.Fla. 1999) (quoting Francosteel Corp. v. M/V Charm, 19 F.3d 624, 626 (11th Cir. 1994); Cable/Home Communication Corp. v. Network Prods., Inc., 902 F.2d 829, 855 (11th Cir. 1990)). Once the plaintiff pleads sufficient material facts to support the court's exercise of personal jurisdiction, the burden shifts to the defendant to challenge plaintiff's allegations by affidavits or other competent evidence. Id. at 1253 (citing Prentice v. Prentice Colour, Inc., 779 F.Supp. 578, 585-586 (M.D.Fla. 1991)). If the defendant's sworn proof raises an issue regarding the jurisdictional facts, the burden shifts back to the plaintiff to refute the defendant's evidence by its own affidavits or other sworn proof. Instrumentacion, 951 So.2d at 1002 (citing Venetian, 554 So.2d at 502). Plaintiff will not satisfy its burden by simply reiterating the factual allegations in the complaint. Lauzon, 77 F.Supp.2d at 1253 (citing Prentice, 779 F.Supp. at 586; Murphy v. Republic Health Corp., 645 F.Supp.124 (S.D.Fla. 1986)). The court may make its decision on the basis of the parties' asserted evidence so long as the affidavits can be harmonized. Instrumentacion, 951 So.2d at 1002. If the affidavits conflict, however, the court must conduct an evidentiary hearing in order to resolve the issues of disputed fact. Id. (citing Venetian, 554 So.2d at 503). With respect to those points of the competing affidavits that do not conflict, however, "the court may accept as true the applicable allegations in the complaint for the purposes of resolving jurisdictional issues . . . ." Nida Corp., 118 F.Supp.2d at 1227 (citing Posner v. Essex Ins. Co., 178 F.3d 1209, 1215 (11th Cir. 1999)). The plaintiff bears the burden of proof at any evidentiary hearing. Id. (citing Musiker v. Projectavision, Inc., 960 F.Supp. 292, 295 (S.D.Fla. 1997)).

Florida's long-arm statute is to be strictly construed. Sculptchair, 94 F.3d at 627 (citing Oriental Imports & Exports, Inc. v. Maduro & Curiel's Bank, N.V., 701 F.2d 889, 891

(11th Cir. 1983)).  Additionally, because the extent of the long-arm statute is governed by Florida law, any construction of the statute by a federal court must rely on prior decisions of the Florida Supreme Court construing the statute.  Id. (citations omitted).  In the event the Florida Supreme Court has not addressed a particular construction of the statute, a federal court is bound by the decisions of the state's intermediate appellate courts, absent some indication the Florida Supreme Court would decide otherwise.  Id. (citations omitted).

Florida's long-arm statute provides for two distinct categories of personal jurisdiction: specific jurisdiction conferred under § 48.193(1) and general jurisdiction conferred under § 48.193(2).  Miller v. Berman, 289 F.Supp.2d 1327, 1331 (M.D.Fla. 2003) (citing Northwestern Aircraft Capital Corp. v. Stewart, 842 So.2d 190, 193 (Fla. 5th DCA 2003)). A court may exercise specific jurisdiction over a nonresident defendant only when the plaintiff's cause of action arises from or is directly related to a defendant's contacts with the forum state.  Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino, 447 F.3d 1357, 1360 n. 3 (11th Cir. 2006) (citing Consolidated Dev. Corp. v. Sherritt, Inc., 216 F.3d 1286, 1292 (11th Cir. 2000)).  This requirement, that the plaintiff's cause of action "arise from" the defendant's activities, is broader than the concept of "proximate cause" and is satisfied by a showing of some "direct affiliation, nexus, or substantial connection between the cause of action and the [defendant's] activities within the state."[11]  Sun Trust Bank v. Sun Int'l Hotels, Ltd., 184 F.Supp.2d 1246, 1269 (S.D.Fla. 2001) (quoting Citicorp Ins. Brokers (Marine) Ltd. v. J.R. Charman, 635 So.2d 79, 81 (Fla. 1st DCA 1994)) (internal quotation marks omitted).  Alternatively, a court may exercise general jurisdiction when the suit does not arise out of the nonresident's activities in the forum state so long as the nonresident is engaged in substantial and not isolated activity in the state.  Stubbs, 447 F.3d at 1360 n.3 (citing Meier v. Sun Int'l Hotels, LTD., 288 F.3d 1264, 1269 (11th Cir. 2002)).

## Discussion

Plaintiff's complaint alleges only that this court has personal jurisdiction over the

---

[11]  This requirement is often referred to as "connexity."  Sun Trust Bank v. Sun Int'l Hotels, Ltd., 184 F.Supp.2d 1246, 1270 (S.D.Fla. 2001) (citing Bloom v. A.H. Pond Co., Inc., 519 F.Supp. 1162, 1168 (S.D.Fla. 1981)).

defendant and does not specify under which section of Florida's long-arm statute jurisdiction is conferred.[12]  In response to defendant's motion to dismiss, however, plaintiff argues that specific jurisdiction is appropriate under § 48.193(1)(a), (b), and (f)(1) and general jurisdiction is appropriate under § 48.193(2).

## A.  Specific Jurisdiction

### 1.  *Florida Statutes Section 48.193(1)(a)* - Conducting a Business

Florida Statutes section 48.193(1)(a) authorizes a Florida court to exercise jurisdiction over a nonresident if the nonresident is "operating, conducting, engaging in, or carrying on a business or business venture in [the] state" or if the nonresident has an office or agency in the state.  Fla. Stat. § 48.193(1)(a).  In order for a court to find that a defendant is carrying on a business or business venture in Florida either itself or through an agent, the court must find that the defendant's activities "considered collectively . . . show a general course of business activity in the state for pecuniary benefit."  Sculptchair, 94 F.3d at 627 (citing Dinsmore v. Martin Blumenthal Assocs. Inc., 314 So.2d 561, 564 (Fla. 1975)).  Factors relevant to, but not dispositive of, this analysis include the presence and operation of an office in Florida; the possession and maintenance of a license to do business in Florida; a substantial number of Florida clients served; and a large percentage of overall revenue gleaned from Florida clients.  Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A., 421 F.3d 1162, 1167 (11th Cir. 2005) (citations omitted).

In this case, the court cannot exercise specific jurisdiction over Paragon based on § 48.193(1)(a) regardless of whether Paragon's business activities are sufficient to constitute "operating, conducting, engaging in, or carrying on a business or business venture" in Florida because Crowe's claim does not arise from any of Paragon's business activities in Florida.[13]  The position which Crowe claims he was unlawfully denied would

---

[12]  It is arguable whether plaintiff's complaint alleges sufficient facts to establish personal jurisdiction under Florida's long-arm statute.  The court need not reach this issue, however, because even if the complaint is sufficient, the court still finds that it lacks personal jurisdiction over the defendant.

[13]  At the time, Paragon's business activities in Florida included soliciting both relocation and affinity clients and managing relocations for Paragon's relocation clients.  Paragon, however, never actually successfully solicited any affinity clients in Florida  Further, there was no evidence presented that Paragon ever managed a relocation into or out of Florida for an affinity client.

have been located in or around Washington, D.C., and would have involved soliciting affinity clients in that area as well as possibly New York City. Crowe would not have been responsible for soliciting affinity clients in Florida, as Jay Acker had that responsibility, to the extent affinity solicitations were conducted in Florida.[14] Crowe also would not have been responsible for managing specific relocations into or out of Florida because Crowe was considered for a position in sales, not operations. Thus, Crowe's cause of action does not arise out of Paragon's business activities in Florida and the court may not exercise personal jurisdiction over Paragon based on § 48.193(1)(a).

   2. _Florida Statutes Section 48.193(1)(b)_ - Committing a Tort

   Florida Statutes section 48.193(1)(b) permits courts sitting in Florida to obtain jurisdiction over a nonresident if the cause of action arises from the nonresident's commission of a tortious act within the state. See Fla. Stat. § 48.193(1)(b); Wendt v. Horowitz, 822 So.2d 1252, 1255 (Fla. 2002). A defendant, however, need not be physically present in the state to commit a tort there. Wendt, 822 So.2d at 1260. Instead, a defendant's tortious act may result from its telephonic, electronic, or written communications into the state. Id. Specific jurisdiction will not attach, however, if the cause of action does not arise from the communications themselves. Id. The cause of action thus will "depend upon proof of either the existence or the content of any of the communications into Florida." Horizon Aggressive Growth, 421 F.3d at 1169.

   In this case, Crowe does not allege that Morabito or Selders ever directed any communication to him in Florida. The only communications into Florida were those from Schaffer to Crowe, none of which Crowe alleges to be tortious. Instead, all of the defendant's actions supporting Crowe's claim of age discrimination occurred outside the state of Florida, specifically by Morabito in Paragon's California office. Specific jurisdiction, therefore, cannot attach to the defendant based on § 48.193(1)(b). See Homeway Furniture Co. of Mount Airy, Inc. v. Horne, 822 So.2d 533, 538 (Fla. 2d DCA 2002) (citing Phillips v. Orange Co., 522 So.2d 64 (Fla. 2d DCA 1988); Freedom Sav. & Loan Ass'n v.

---

   [14]   See supra notes 4, 8, and 10.

Ormandy & Assocs., 479 So.2d 316 (Fla. 5th DCA 1985)).

    *3.  Florida Statutes Section 48.193(1)(f) - Causing Injury to Persons or Property within Florida*

    Florida Statutes section 48.193(1)(f)(1) provides that the court may exercise personal jurisdiction over a nonresident who causes an injury within the state, "arising out of an act or omission by the defendant outside [the] state, if, at or about the time of the injury . . . [t]he defendant was engaged in solicitation or service activities within [the] state." Fla. Stat. § 48.193(1)(f)(1).  In this case, the court may not exercise specific jurisdiction under this section for the same reason it could not under § 48.193(1)(a), i.e. there is no connection between plaintiff's alleged injury and Paragon's solicitation and service activities in Florida.  The position Crowe claims he was unlawfully denied would have been located in Washington, D.C., and would have been a sales position involving the solicitation of affinity clients in that area, New York City, and throughout the Northeast.  The position thus was unconnected to Paragon's solicitation of affinity clients in Florida, which was performed by Jay Acker, or its service activities in Florida, which were performed by operations employees.

    **B.  General Jurisdiction:** *Florida Statutes Section 48.193(2) - Substantial and Not Isolated Activity in the State*

    Florida Statutes section 48.193(2) provides that a Florida court may exercise personal jurisdiction over a nonresident who engages in "substantial and not isolated activity within [Florida], whether such activity is wholly interstate, intrastate, or otherwise . . . ." Fla. Stat. § 48.193(2).  Jurisdiction under this section does not require a showing of connectivity between a non-resident defendant's activities and plaintiff's cause of action. Woods v. Nova Cos. Belize Ltd., 739 So. 2d 617, 620 (Fla. 4th DCA 1999) (citing Helicopteros Nacionales de Colombia S. A. v. Hall, 466 U.S. 408, 416 (1984)).

    Florida courts have interpreted "substantial and not isolated activity" to mean "continuous and systematic general business contact."  Autonation, Inc. v. Whitlock, 276 F.Supp.2d 1258, 1262 (S.D.Fla. 2003) (citing Woods, 739 So. 2d at 620).  In considering a defendant's contacts, courts must look at the defendant's activities collectively over a

relevant period of years leading up to the lawsuit. Autonation, 276 F.Supp.2d at 1263. For jurisdiction to attach, these contacts must show a "general course of business activity in the State for pecuniary benefit." Stubbs, 447 F.3d at 1361 (citations omitted) (internal quotation marks omitted).[15] While the case law uses this same language in determining whether specific jurisdiction exists under § 48.193(1)(a), the level of business contacts required to establish general jurisdiction is greater than the level of contacts required to establish specific jurisdiction. See Kozial v. Bombardier-Rotax GMBH, 129 Fed.Appx. 543, 546 (11th Cir.2005), cert. denied, 126 S.Ct. 1568 (2006); accord Consolidated Dev. Corp., 216 F.3d at 1292 (citations omitted). Indeed, to support the court's exercise of general jurisdiction, a defendant's business contacts with the forum "must be especially pervasive and substantial . . . ." General Cigar Holdings, Inc. v. Altadis, S.A., 205 F.Supp.2d 1335, 1343 (S.D.Fla.2002), aff'd 54 Fed. Appx. 492 (11th Cir.2002). The contacts "must be so extensive to be tantamount to [a defendant] being constructively present in the state to such a degree that it would be fundamentally fair to require it to answer in [the forum state's courts] in any litigation arising out of any transaction or occurrence taking place anywhere in the world." Baker v. Carnival Corp., 2006 WL 3360418, *2 (S.D.Fla. Nov. 20, 2006) (slip copy) (quoting Purdue Research Foundation v. Sanofi Synthelabo, S.A., 338 F.3d 773, 787 (7th Cir.2003)) (internal quotation marks omitted).[16]

In this case, Paragon has no offices in Florida, nor any subsidiaries, agents, or employees. Paragon does not own any property in Florida, nor does it have a Florida telephone number or bank account. Further, Paragon is not registered or licensed to do business in Florida. Finally, Paragon directs no media advertising into Florida. In response

---

[15]   As previously discussed, see supra page 7, factors relevant to, but not dispositive of the court's analysis of whether a defendant is engaged in a "general course of business activity in the State for pecuniary benefit" include the presence and operation of an office in Florida; the possession and maintenance of a license to do business in Florida; a substantial number of Florida clients served; and a large percentage of overall revenue gleaned from Florida clients. Horizon, 421 F.3d at 1167 (citations omitted).

[16]   The "continuous and systematic" contacts requirement is sufficient to satisfy the constitutional due process requirement of "minimum contacts." Autonation, 276 F.Supp.2d at 1262. Thus, because § 48.193(2) demands such a high threshold, if a defendant's activities meet the statutory requirements of this section, the minimum contacts due process standard is also satisfied. Woods, 739 So. 2d at 620.

to Paragon's motion to dismiss, however, Crowe asserts that Paragon's business operations in the state are sufficient to satisfy the requirements of general jurisdiction because Paragon "provides relocation services in more than 140 countries and all 50 states" and its business in Florida generates 2.7% of its total yearly revenue.

The record shows that in its fifteen years of business prior to the filing of this lawsuit, Paragon has had only one client headquartered in Florida out of more than eighty-five total clients. This client, Citrix, was one of Paragon's relocation clients.[17] Paragon performed approximately forty relocations for Citrix per year, and would send an account manager to meet with Citrix representatives once per year, with more frequent communication occurring by telephone and email. Paragon also performed relocation services for a number of other clients headquartered outside of Florida who contracted with Paragon to move the client's employees into or out of Florida. The relocations for Citrix combined with the relocations for these other companies into or out of Florida amounted to 2% of the company's total volume of business and 2.7% of its yearly revenues (approximately $400,000).[18] This level of business is insufficient to constitute continuous and systematic business contacts for purposes of general jurisdiction. See, e.g., Associated Transport Line, Inc. v. Productos Fitosanitarios Proficol El Carmen, S.A., 197 F.3d 1070, 1075 (11th Cir. 2005) (finding that nine sales during a four-year period were insufficient to support general jurisdiction); Horizon, 421 F.3d at 1167 (finding the defendant was not engaged in a general course of business as the defendant had only six Florida clients who accounted for, at most, less than 5% of its gross revenue); Rexam Airspray, Inc. v. Arminak, 471 F.Supp.2d 1292 (S.D.Fla. 2007) (finding no basis for general jurisdiction when less than 1% of total sales came from Florida customers); Milberg Factors, Inc. v. Greenbaum, 585 So.2d 1089, 1091 (Fla. 3d DCA 1991) (finding the defendant's contacts insufficient for specific or general jurisdiction when the defendant's only business contacts

---

[17]  The record does not establish the complete corporate name for Citrix.

[18]  Morabito testified that the amount of business generated solely by Citrix was a negligible component of Paragon's revenues, as Citrix only required a small number of relocations and each relocation generated minimal commissions.

with the forum amounted to less than 2% of the defendant's revenue); accord Dalton v. R & W Marine, Inc., 897 F.2d 1359, 1362 & n.3 (5th Cir. 1990) (declining to exercise general jurisdiction when the defendant's purchases combined with its sales in the forum yielded 12.9% of its total income); Stairmaster Sports/Medical Prod. Inc., 916 F.Supp. 1049, 1052-53 (W.D.Wash. 1994), aff'd 78 F.3d 602 (Fed. Cir. 1996) (holding that no general jurisdiction existed when forum sales constituted 3% of the defendant's total sales).[19] Further, as far as Paragon's relocations in and out of Florida, these business activities were managed from Paragon's offices in either Connecticut, Illinois, or California, not Florida. See, e.g., Horizon, 421 F.3d at 1167-68 (finding the defendant was not conducting business in Florida as it physically performed all of its work for a Florida client from its offices in California).

Although not raised or argued by plaintiff, the court notes that in addition to Paragon's management of relocations for their relocation clients into and out of Florida, the evidence adduced at the hearing showed that Paragon also solicited both relocation and affinity clients in Florida. "[C]ontinued solicitation and procurement of business may constitute substantial and not isolated activity." Price v. Point Marine, Inc., 610 So.2d 1339, 1342 (Fla. 1st DCA 1992). "Absent a continued and sustained effort to procure business, or actual procurement of business," however, haphazard and sporadic solicitations "are insufficient to constitute substantial activities within the state of Florida." Id. In this case, Joe Morobito testified that Jay Acker solicited business in Florida by traveling to the state every other month to solicit business. Morabito, however, could not recall how often these trips occurred. Morobito also testified that Florida was relatively unimportant to Acker because the pool of potential relocation clients was much larger in Texas than Florida. For example, at the time this lawsuit was filed, Paragon had

---

[19]   While the Sixth Circuit has found general jurisdiction in a case where approximately 3% of a defendant's sales occurred in the forum state, see Michigan National Bank v. Quality Dinette, Inc., 888 F.2d 462 (6th Cir. 1989), the court did not base its decision solely on the 3% sales figure. Id. at 465. Instead, the court considered additional contacts by the defendant with the forum, including defendant's actions of retaining an independent sales representative in the forum, soliciting sales from 122 businesses in a single year, conducting mail order solicitations, and making at least one sale in the forum every month for two years. Id. Paragon has no similar contacts with Florida.

successfully solicited only one relocation client in Florida and had never successfully solicited any organizations for its affinity services.[20]  Although Brian Schaffer testified that he also had solicited business in Florida, he only identified one solicitation trip to the state during his one-year tenure with the company.  Finally, Morabito testified that Paragon advertised in national magazines, whose circulation may have included Florida.

From this evidence, the court concludes that Paragon's solicitations in Florida were insignificant and fell far short of showing a continual and sustained effort to procure business within the state.  See Prentice, 779 F.Supp. at 584 ("[C]aselaw both federally and from the Florida courts does not evince any willingness or rationale to find solicitation activities alone sufficient grounds for the assertion of general jurisdiction."); Price, 610 So.2d at 1342 (finding general jurisdiction did not exist over a defendant who had unsuccessfully solicited business in Florida on thirteen occasions by sending letters to prospective clients who were in the market for the defendant's services); accord Landoil Resources Corp. v. Alexander & Alexander Services, Inc., 918 F.2d 1039 (2d Cir. 1990) (finding thirteen business trips in eighteen months insufficient to show continuous and systematic contacts); Aquascutum of London, Inc. v. S.S. American Champion, 426 F.2d 205 (2d Cir. 1970) (holding that "visits to solicit business in New York 'every few months'" were insufficient to sustain jurisdiction); see also Rexam, 471 F.Supp.2d at 1300-01 (quoting Lawson Cattle & Equip., Inc. v. Pasture Renovators, LLC, 139 Fed.Appx. 140, 143 (11th Cir. 2005)) ("[M]erely advertising in magazines of national circulation that are read in the forum state is not a significant contact for jurisdictional purposes.  Otherwise a business that advertised in a national magazine would be subject to jurisdiction in virtually every state.") (internal quotation marks omitted); cf. Obermaier v. Kenneth Copeland Evangelistic Ass'n., Inc., 208 F.Supp.2d 1288 (M.D.Fla. 2002) (finding general jurisdiction where a defendant solicited contributions from Florida residents through local television channels and internet sites and then contacted Florida residents by mail in response to their donations).

---

[20]  Morabito testified that Paragon no longer provides services for Citrix, but has contracted with another small client headquartered in Florida since this lawsuit was filed.

**Conclusion**

For the foregoing reasons, the court concludes the plaintiff has failed to meet his burden of establishing this court's jurisdiction over the defendant under Florida's long-arm statute.[21]

In lieu of dismissal, Crowe requests that the case be transferred to the United States District Court for the Central District of California, pursuant to 28 U.S.C. § 1404(a).[22]  The court agrees the case should be transferred; however, it does not believe that transfer is appropriate under 28 U.S.C. § 1404(a), because that statute authorizes a transfer for the convenience of the parties and witnesses, which is not a consideration here.  Alternatively, 28 U.S.C. § 1631 provides for transfer of a case whenever a court determines there is a "want of jurisdiction" so long as the transfer is in the interest of justice.[23]  28 U.S.C. § 1631. In this case, the court has found personal jurisdiction lacking over Paragon in this court, and it now also determines that a transfer of the case is in the interest of justice.  The interest of justice requires transfer of this case as opposed to dismissal because a dismissal would likely result in Crowe being barred from later refiling his action in a court of proper jurisdiction due to the statutory ninety-day filing period under Title VII.  See Bost v. Fed. Express Corp., 372 F.3d 1233, 1242 (11th Cir. 2004) (citing Stein v. Reynolds Sec.,

---

[21]  Because the court has determined there is no basis for personal jurisdiction over Paragon under Florida's long-arm statute, it need not consider whether its exercise of personal jurisdiction would offend due process.  See Nida Corp., 118 F.Supp.2d at 1228.

[22]  Crowe made this request in his response to defendant's motion to dismiss.  Defendant has not sought to file a reply addressing this issue.

[23]  There is a debate among courts on the question of whether § 1631 authorizes transfer of a case when there is a lack of personal jurisdiction.  Relying on the statute's legislative history, some courts have concluded that Congress limited transfers under §1631 to cases in which subject matter jurisdiction only was lacking.  See SongByrd,Inc. v. Estate of Grossman, 206 F.3d 172, 179 n.9 (2d Cir. 2000); Bearse v. Main Street Investments, 170 F.Supp.2d 107 (D.Mass. 2001); Adams v. Unione Mediterranea di Sicurta, 1001 WL 823733 (D.La. 2001).  Other courts, considering the plain language of the statute, have concluded instead that "want of jurisdiction" refers to both subject matter and personal jurisdiction.  See Cimon v. Gaffney, 401 F.3d 1, 7 n.21 (1st Cir. 2005); Roman v. Ashcroft, 340 F.3d 314 (6th Cir. 2003); Viernow v. Euripides Development Co., 157 F.3d 785 (10th Cir. 1998); Tellschow v. Aetna Casualty & Surety Co., 585 F.Supp. 593, 595 (S.D.Fla. 1984).  The Eleventh Circuit has not addressed the question.  Finding the statute clear and unambiguous, the court agrees with the broader interpretation of the statute and concludes that § 1631 permits transfer of this case under the circumstances presented.

Inc., 667 F.2d 33, 34 (11th Cir. 1982)) (Title VII claim must be filed within ninety-days following plaintiff's receipt of "Notice of Right to Sue" from the Equal Employment Opportunity Commission).  Considering this fact as well as the fact that a substantial part of the events giving rise to the claim did not occur in this district, the court therefore concludes that the interest of justice requires that the case be transferred to the United States District Court for the Central District of California where Paragon is subject to personal jurisdiction and where its principle place of business is located.

Accordingly, it is hereby ordered:

1.  Defendant's Motion to Dismiss for Lack of Personal Jurisdiction (doc. 7) is DENIED.

2.  The clerk is directed to transfer this action to the United States District Court for the Central District of California together with the complete court file.

**ORDERED** on this __16th__ day of August, 2007.


*s/ M. Casey Rodgers*

**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**